Filed 2/27/13  P. v. Gonzalez CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL GONZALEZ,<br><br>    Defendant and Appellant. | H037851<br>(Monterey County<br>Super. Ct. No. SS101065) |

Defendant Miguel Angel Gonzalez was convicted by jury of possession of a weapon by a prisoner.  (Pen. Code, § 4502, subd. (a).)[1]  Defendant admitted two prior strike convictions, and the trial court subsequently sentenced him to an indeterminate term of 25 years to life pursuant to the Three Strikes law.

On appeal, defendant contends that he received ineffective assistance of counsel because his trial counsel failed to bring a posttrial *Romero*[2] motion on his behalf based on his changed circumstances, including his disassociation from his gang, and that the trial court abused its discretion during the sentencing hearing by failing to realize that it possessed the power to dismiss prior convictions despite its earlier denial of his pretrial *Romero* motion.  Defendant additionally argues that he is entitled to automatic resentencing under Proposition 36, the Three Strikes Reform Act of 2012, a voter

---

[1] Further unspecified statutory references are to the Penal Code.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 518 (*Romero*).

initiative that amended sections 667 and 1170.12 and added section 1170.126.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant, an inmate at Salinas Valley State Prison, approached a correctional officer in the yard on January 29, 2010, complaining of abdominal pain.  Defendant told the officer he needed to go see a doctor.  Defendant was taken to the prison's treatment facility, where he told a nurse that he placed something in his rectum a few days earlier.  An x-ray was taken at the treatment facility, which revealed what was described as a wrapped "dark object" containing metal.  Defendant was transferred to Natividad Medical Center in Salinas, California.

There, he informed medical personnel that the object he had lodged earlier in his rectum had shifted, causing pain.[3]  The treating doctor performed a colonoscopy on defendant, and was able to remove the wrapped object.  The item was approximately five inches in length and a half an inch wide.  At trial, correctional officers testified that the object was plastic with a metal tip sharpened at one end, which could be used as a stabbing weapon.

The district attorney filed an amended information on July 21, 2010, alleging that defendant possessed a weapon while incarcerated at Salinas Valley State Prison in violation of section 4502, subdivision (a).  The information further alleged that defendant suffered from two prior strike convictions (§ 1170.12, subd. (c)(2)).  The first strike prior alleged was for a 2008 conviction for second degree robbery with an enhancement for personal use of a weapon (§§ 211, 12022, subd. (b)(1)) from Santa Cruz County.  During

---

[3] A probation officer interviewed defendant at Salinas Valley State Prison on December 21, 2011, about the incident.  During the interview, defendant told the probation officer that a fellow inmate gave him the wrapped object and told him to hold it.  Defendant stated that he did not know what the object was, but that if a "Northerner" asked you to do a favor, you do it.  Defendant also told the probation officer that he "probably" would not have taken the object if he knew it was a knife.

2

this offense, defendant and several accomplices approached a former classmate of theirs and robbed him after a brief conversation.

The second strike prior alleged was for a 2008 conviction for assault with a deadly weapon, with enhancements for personal infliction of great bodily injury and committing the offense for the benefit of a criminal street gang (§§ 245, subd. (a)(1), 12022.7, subd. (a), 186.22, subd. (b)(1)) also from Santa Cruz County. During this offense, defendant and several friends arrived uninvited to a party. One of defendant's friends was the cousin of the party's hostess. The hostess later stated that though defendant and his friends were uninvited, she allowed them to stay. Several hours later, one of defendant's friends yelled out that he had been stabbed, and a fight broke out.[4] During the fight, defendant struck one of the party guests multiple times, allegedly hitting the victim in the head and upper body with a pipe-like object. These two alleged strike priors were committed within approximately four hours of each other.[5]

Prior to the commencement of the jury trial, defendant's trial counsel brought a *Romero* request before the trial court, asking it to exercise its discretion under section 1385, subdivision (a) to strike one or more of defendant's prior felony convictions in the furtherance of justice. In support of his request, defendant's trial counsel asserted that defendant's current offense of possession of a weapon in prison was nonviolent and unserious, that defendant cooperated with law enforcement with regards to the current offense, and that defendant's personal circumstances and history weighed in favor of

---

[4] The probation officer's report prepared for the sentencing hearing contains a slightly different set of facts for this second offense. In this report, the probation officer asserts that defendant is the one who yelled that he was stabbed. However, we adhere to the 2008 probation report summary of this offense, which was based upon a Santa Cruz Sheriff's Office report. The 2008 probation report states that defendant's friend is the one who yelled out that he was stabbed.

[5] Defendant's robbery offense took place at approximately 8:55 p.m. on February 29, 2008. Defendant's assault offense took place at approximately 12:39 a.m. on March 1, 2008.

dismissing the prior convictions. Defendant's trial counsel also included information about defendant's character and family background in the *Romero* request, explaining that defendant was raised entirely by his mother whom he supported financially by taking low-income jobs starting at the age of 14, which caused him to drop out of high school. The request further contained information that defendant attended church and Alcoholics Anonymous programs while in county jail for four months. After a hearing, the trial court denied defendant's *Romero* request on August 18, 2010.

Trial commenced on July 18, 2011. On July 20, 2011, defendant admitted that he suffered the two prior strikes alleged in the information filed by the district attorney. Trial proceedings concluded, and a jury found defendant guilty of possessing a weapon in prison, a violation of section 4502, subdivision (a), on July 20, 2011.

The trial court held a sentencing hearing on January 18, 2012. During the hearing, defendant's trial counsel made the following statement to the court: "[w]e wish that this Court would be able to strike a strike and give [defendant] a sentence other than what's prescribed by law. But we understand that we did file a *Romero* motion. It was denied. But unfortunately, this is a young man whose life is being tossed away, we feel, needlessly." Prior to imposing sentence, the trial court stated on the record that "the Court has one sentence that can be imposed in this matter, and [the Court] will impose that sentence." The trial court then sentenced defendant to an indeterminate term of 25 years to life. Defendant filed a timely notice of appeal on February 16, 2012.

## DISCUSSION

On appeal, defendant argues that he received ineffective assistance of counsel because his trial counsel failed to bring a posttrial "*Romero* motion." He further argues the trial court abused its discretion during the sentencing since it failed to realize it still possessed the power to strike his prior convictions under section 1385, subdivision (a). Lastly, defendant contends that he is entitled to automatic resentencing under the Three

4

Strikes Reform Act, as his conviction was not yet final at the time the amendments became effective.  For the reasons set forth below, we affirm the judgment.

*Ineffective Assistance of Counsel*

***Standard of Review***

The standard of review for a claim of ineffective assistance of counsel is well settled.  "To prevail on a claim of ineffective assistance of counsel, a defendant ' "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." '  [Citation.]  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 689.)  Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.  (*Id*. at p. 690.)  To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)  Moreover, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)"  (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

***Failure to Make a Second "Romero Motion"***

Defendant argues that his trial counsel's failure to make a second, posttrial "*Romero* motion" constituted ineffective assistance of counsel, as he argues that it is apparent from the record that his trial counsel failed to bring a motion based on the erroneous belief that a second motion could not be made.  Specifically, defendant points to the following statement made by his trial counsel during the sentencing hearing as

5

proof of his counsel's lack of knowledge: "We wish that this Court would be able to strike a strike and give him a sentence other than what's prescribed by law. But we understand that we did file a *Romero* motion. It was denied. But unfortunately, this is a young man whose life is being tossed away, we feel, needlessly." Defendant contends that this statement confirms that his trial counsel was unaware of his ability to make a second *Romero* request, and that this failure rendered his legal representation below an objective standard of reasonableness.

*Romero* stands for the proposition that under section 1385, subdivision (a), a trial court may, either on its own motion or by motion of the prosecuting attorney, dismiss a defendant's priors in the furtherance of justice. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) The People's contention that there is no such thing as a "*Romero* motion" is therefore accurate under section 1385, though defense counsel does have the right to invite the court to dismiss priors pursuant to section 1385. (*Carmony*, *supra*, at p. 375.)

Preliminary, the People argue that defendant "forfeited any claim on appeal that the sentencing court erred by failing to strike a strike," relying on *Carmony*, *supra*, 33 Cal.4th at page 376, and *People v. Askey* (1996) 49 Cal.App.4th 381, 388. The People's arguments are unmeritorious, as unlike the defendants in *Carmony* and *Askey*, defendant here does not challenge the trial court's failure to strike a strike pursuant to section 1385. Defendant instead argues that his trial counsel rendered ineffective assistance of counsel for his failure to raise a second "*Romero* motion," and accordingly defendant has not forfeited his claim on appeal for failing to raise it below.

Second, the People argue that defendant misconstrues the applicable law and procedure for raising a claim of ineffective assistance of counsel. The People argue that defendant's appeal fails to acknowledge the principles that in the furtherance of judicial economy, if the appellate record fails to include a direct explanation for the trial counsel's actions, appellate counsel should instead join a verified petition for writ of

6

habeas corpus. (*People v. Mendoza Tello*, *supra*, 15 Cal.4th at pp. 266-267.) Unlike a direct appeal where we are limited to the record before us, a habeas corpus proceeding may include an evidentiary hearing.[6]

The People contend that contrary to defendant's arguments, the record here does not contain a direct explanation for the trial counsel's actions. We agree, as defendant's argument relies solely on one ambiguous statement made by his trial counsel to the court during the sentencing hearing. It is apparent from the briefs and the record that the trial counsel was never asked about his failure to bring a second *Romero* request. Taken alone, the statement is not definitive nor does it expressly demonstrate a lack of knowledge.

Further, we need not speculate as to the trial counsel's state of mind. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697.) Defendant's claim of ineffective assistance of counsel therefore fails since he was not prejudiced by any perceived omissions made by his trial counsel. There is no indication that the trial court was unaware of its discretion to strike prior strikes, and it was not an abuse of discretion for it to decline to strike any of defendant's prior convictions.

### *The Trial Court's Failure to Strike Prior Strike Convictions Under Section 1385*

Section 1385 grants a trial court the discretion to strike a prior strike on its own motion, without request of defense counsel or motion by the prosecution. Given this authority, defendant's claim of ineffective assistance of counsel can only prevail if he

---

[6] A reviewing court may order a petition for writ of habeas corpus returned to the superior court. (Cal. Rules of Court, rule 8.385(e).) Under California Rules of Court, rule 4.551(f), the superior court may order an evidentiary hearing if, after considering the verified petition and any accompanying declarations and other documents, "there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact."

demonstrates that the trial court was unaware of its discretion to strike priors, or that the trial court was aware of its discretion under section 1385 but abused its discretion in declining to strike his prior convictions.  Accordingly, even if defendant's trial counsel was unaware of his ability to bring a renewed *Romero* request, if the trial court was fully aware of its discretion to strike prior strikes, and did not abuse its discretion by declining to do so, defendant would be unable to demonstrate the prejudice required for a successful claim of ineffective assistance.  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)  We find that this is the case here.

Initially, defendant contends that the trial court abused its discretion for failing to strike his prior strike convictions because it did not know it had the power to do so.  Defendant's argument rests on this statement made by the trial court during the sentencing hearing:  "So I have reviewed all of the attachments to the probation report.  The attachments include a letter from Mr. Gonzalez, from several of his family members, from his girlfriend, from [defendant's trial counsel], as well as a sentencing document related to a statement in mitigation pursuant to Penal Code Section 1204. [¶] And, as you know, Mr. Gonzale[z], the Court has one sentence that can be imposed in this matter, and I will impose that sentence."  From this, defendant concludes that the trial court lacked knowledge of its discretionary power to strike strikes pursuant to section 1385.

We are unconvinced.  Section 1385 does not impose a duty on the trial court to state in the record the reasons for *not* striking a strike.  Section 1385 only imposes a duty on the trial court to include a statement of reasons in the record if it chooses to exercise its discretion in striking a prior strike.[7]  "The general rule is that a trial court is presumed

---

[7] Section 1385, subdivision (a) states in full:  "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.  The reasons for the dismissal must be set forth in an order entered upon the minutes.  No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

to have been aware of and followed the applicable law." (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) This general rule is applicable to the judicial determination of sentences. (*People v. Moran* (1970) 1 Cal.3d 755, 762.) Defendant would have us read between the lines to infer that the trial court did not understand it possessed the discretion to strike his prior strikes pursuant to section 1385, when in fact the record is silent on the issue. Absent a clear showing that the trial court misunderstood its discretion under section 1385, we may not presume that it failed to follow the applicable law. Accordingly, our analysis must turn to whether or not the trial court abused its discretion by declining to strike defendant's prior convictions.

In reviewing the trial court's decision not to strike defendant's prior strikes, we recognize that the Three Strikes law is intended to limit the discretion of a trial court in sentencing certain habitual offenders. (*Romero*, *supra*, 13 Cal.4th at p. 528.) Under the version of the Three Strikes law in effect at the time of defendant's sentencing, there is but one sentence to be given, unless the trial court decides to exercise its discretion in striking a defendant's strike priors in the furtherance of justice. This discretion is limited, and is upheld to a stringent standard. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) In order to strike a prior conviction, the trial court must make the determination that the defendant is outside the spirit of the Three Strikes law by weighing factors such as the nature and circumstances of the present offense, the defendant's prior serious or violent felony convictions, and the defendant's background, character, and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

In reviewing a trial court's decision declining to strike a prior conviction under section 1385, it is " 'not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) If the record is silent on the issue, the presumption is that the trial court applied the law correctly. (*Ibid.*) Furthermore, "[b]ecause the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit

of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case--where the relevant factors described in *Williams*, *supra*, 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ--the failure to strike would constitute an abuse of discretion." (*Ibid.*)

Defendant argues that significant facts had developed in the time since his defense counsel made its first *Romero* request that should have persuaded the trial court to strike his prior strike conviction. First, defendant argues that by the time of the sentencing hearing he was a gang dropout, and had disassociated from the Norteños in July 2011. Further, defendant argues that the fact that his two prior strike offenses were committed within several hours of each other is ameliorative. Defendant additionally states that there were other mitigating factors relating to the assault crime, that he possesses a strong support network that could assist him, and that the trial court could have crafted a sentence that would keep him in prison past the age where he is likely to recidivate without resorting to sentencing him as a third strike offender under the Three Strikes law. However, despite the many reasons defendant advances for the proposition that failing to strike one of his prior strikes amounts to an abuse of discretion, we do not find that the circumstances of his case are such that no reasonable person would disagree that he falls outside the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Contrary to defendant's claims, the trial court reviewed all of these positive factors prior to making its sentencing determination, including the fact that he disassociated from a gang. This information was discussed in the probation report and in its related attachments, which the trial court acknowledged it considered on the record during the sentencing hearing.

10

Further, defendant fails to address the factors weighing against the trial court striking his prior strikes. As the probation officer noted in his probation report, defendant reportedly stated that he never considered himself a Norteño gang member, but that he admitted associating with gang members because he grew up with them. Defendant also further stated that he only pled to the gang enhancement charges on his prior strikes because his codefendants were gang members, and that he did not fully understand the consequences of the charges at the time. Defendant's disassociation from the Norteño gang, though likely a positive step towards his rehabilitation, does not erase the circumstances of his past strike offenses, and is only one consideration. As the probation officer noted in his report, defendant's criminal history dates back to the age of 15, where he committed offenses such as theft and other drug and gang-related crimes. Further, defendant was aware that he had two strikes at the time he committed his third strike, and knew of the potential consequences of an additional felony, as indicated by an interview defendant participated in with a probation officer.

Additionally, simply because defendant's two strike priors were for offenses committed close in time does not mean the trial court abused its discretion in declining to strike one of the prior convictions. Several appellate courts have contemplated the issue of whether or not a trial court must strike a prior strike if it arises from the same criminal act as another strike, with some finding that failing to do so constitutes abuse of discretion.[8] However, these cases are inapplicable. Defendant's prior strikes did not

---

[8] In *People v. Scott* (2009) 179 Cal.App.4th 920 (*Scott*), the Third District reviewed a case where the trial court declined to strike one of the defendant's prior convictions for robbery and carjacking, offenses that arose from the same criminal act. The Third District concluded that the fact that the strikes arose from the same criminal act was a factor for the trial court to consider, but did not mandate that the trial court strike one of the prior convictions under section 1385. (*Scott*, *supra*, at p. 931.) In *Scott*, the Third District expressly criticized the holding of the Second District in *People v. Burgos* (2004) 117 Cal.App.4th 1209, which held that the trial court there abused its (continued)

11

arise out of the same offense, but rather arose out of two separate offenses that were hours apart, at different locations, and with different victims.

Accordingly, we do not find that the trial court abused its discretion in declining to strike one of defendant's prior strikes. As a result, defendant does not demonstrate he was prejudiced from his trial counsel's failure to bring a second *Romero* request before the trial court. We therefore find defendant's claim of ineffective assistance of trial counsel fails.

*Automatic Resentencing Under the Three Strikes Reform Act* (*Proposition 36*)

In his supplemental brief, defendant claims that Proposition 36, the Three Strikes Reform Act, entitles him to automatic resentencing because his conviction was not yet final at the time the Act came into effect. For the reasons set forth below, we find that the amendments to the Three Strikes law enacted by Proposition 36 apply prospectively and do not entitle defendant to an automatic resentencing. Prior to turning to defendant's claim on the merits, we first give an overview of Proposition 36 and the reforms made to our state's Three Strikes law.

**Background of Proposition 36 and the Three Strikes Law**

California's electorate passed the Proposition 36 on November 6, 2012, which became effective the next day. (Cal. Const., art. II, § 10, subd. (a).) Proposition 36 amended sections 667 and 1170.12. The amendments to sections 1170.12 and 667 changed the statute so that now a person with two or more prior serious strikes must be sentenced to an indeterminate term of 25 years to life, except as provided in section 1170.12, subdivision (c)(2)(C), and section 667, subdivision (e)(2)(C). (§ 1170.12, subd. (c)(2)(A).) Section 1170.12, subdivision (c)(2)(C) and section 667, subdivision (e)(2)(C), together mandate that defendants who have two or more strikes, but whose current felony

---

discretion by failing to strike one of the defendant's prior convictions for attempted carjacking and attempted robbery because they arose out of the same criminal act.

12

is not a serious or violent felony defined under section 667, subdivision (d) and section 1170.12, subdivision (b), must be sentenced as a second strike offender pursuant to section 667, subdivision (e)(1), or section 1170.12, subdivision (c)(1).

Those defendants whose current strike is a serious or violent felony are sentenced as third strike offenders. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) The amendments create four exceptions under sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C). If the prosecution pleads and proves any of these exceptions exist, the defendant must also be sentenced as a third strike offender. The first three exceptions deal with characteristics of a defendant's current felony, such as if he was armed with a firearm during the commission of the current felony. (§§ 667, subd. (e)(2)(C)(i)-(iii), 1170.12, subd. (c)(2)(C)(i)-(iii).) The last exception involves the nature and characteristics of a defendant's strike priors, such as if one of the defendant's strike priors was a violent sex offense or a homicide. (§§ 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv).)

Proposition 36 also added section 1170.126, which applies exclusively to those "persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) Section 1170.126 sets forth a procedure through which certain prisoners can petition the court for resentencing.

First, an eligible prisoner must file a petition for recall of sentence with the trial court within two years of the Three Strikes Reform Act's effective date, "or at a later date upon a showing of good cause." (§ 1170.126, subd. (b).) The trial court then must determine if the prisoner satisfies the eligibility requirements under section 1170.126, subdivision (e). If so, the trial court shall resentence the prisoner as a second strike offender unless it makes the determination that resentencing him or her "would pose an unreasonable risk of danger to public safety." (*Id*. subd. (f).)

13

In determining if resentencing would pose an unreasonable risk to public safety, the court may consider the prisoner's disciplinary record while incarcerated, the prisoner's criminal history, the prisoner's prior prison commitments, the remoteness of the crime, and any other relevant factors. (§ 1170.126, subd. (g).) Under no circumstances may resentencing result in a longer sentence. (*Id*. subd. (h).) Subdivision (k) of section 1170.126 further specifies that "[n]othing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the [prisoner]."

### *Standard of Review and Principles of Statutory Construction*

The question of whether or not the amendments made to the Three Strikes law are properly applied prospectively is a question of law that we will review de novo. (*People v. Failla* (2006) 140 Cal.App.4th 1514, 1520.)

Our role in interpreting a voter initiative, such as Proposition 36, is the same as our role in interpreting statutory construction. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.) To properly construe a statute, we must " ' "ascertain the Legislature's intent so as to effectuate the purpose of the law." ' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 (*Canty*).) Accordingly, in interpreting the statute we must determine the intent of the voters in passing Proposition 36.

The rules of statutory construction are well settled. "Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning. [Citations.] If the language is clear and unambiguous, we follow the plain meaning of the measure. [Citations.] '[T]he "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' " (*Canty*, *supra*, 32 Cal.4th at p. 1276.) "The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.] The intent of the law prevails over the

14

letter of the law, and ' "the letter will, if possible, be so read as to conform to the spirit of the act." ' " (*Id.* at pp. 1276-1277.)  If the Legislature, or the electorate in the case of an initiative measure, " 'has provided an express definition of a term, that definition ordinarily is binding on the courts.' " (*Id*. at p. 1277.)

### *Applicability of the* **Estrada** *Rule*

Defendant argues that he should be entitled to automatic resentencing under the amendments made to the Three Strikes law by Proposition 36 since his current offense is not a violent or serious felony, because none of the exceptions that require sentencing a defendant as a third strike offender under sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C), apply to his case, and because his judgment of conviction was not yet final pending the resolution of this appeal when Proposition 36 passed on November 6, 2012, and went into effect on November 7, 2012.  (*In re Pine* (1977) 66 Cal.App.3d 593, 594 [holding that judgment of conviction not yet final so long as remedy may be provided on direct appeal].)

Defendant relies on the California Supreme Court's decision in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  In *Estrada*, the court concluded that if the Legislature amends a statute to mitigate the punishment for a specific crime, it must be assumed that the Legislature intended that the statute be retroactively applied to *all* defendants whose judgments of conviction were not final at the time of the statute's operative date if there is no other evidence to the contrary.  (*Id.* at pp. 742-748; *People v. Brown* (2012) 54 Cal.4th 314, 323 (*Brown*).)  We find, like our colleagues at the Fifth Appellate District did in *People v. Yearwood* (2013) __ Cal.App.4th __ [2013 Cal.App. LEXIS 58, *23], that the *Estrada* rule does not compel retroactive application of the amendments effectuated by Proposition 36.

The rule derived from *Estrada* is not without limits.  Section 3 specifies that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared."  Thus, while *Estrada* certainly operates to determine if a statute should be retroactively or

15

prospectively applied, section 3 is also still applicable such that "in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209.) Put in other words, the *Estrada* holding applies in situations where "the amendatory statute mitigates punishment and there is no savings clause." (*Estrada*, *supra*, 63 Cal.2d at p. 748.) As our Supreme Court in *Brown* surmised, "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*Brown*, *supra*, 54 Cal.4th at p. 324.)

In *Brown*, our Supreme Court recognized some of the limitations to the applicability of the *Estrada* rule. The court held that the holding in *Estrada* did not extend to retroactively apply an increased conduct credit calculation under section 4019 to those defendants whose judgments were not final on the statute's effective date. (*Brown*, *supra*, 54 Cal.4th at p. 328.) In *Brown*, the defendant argued that the *Estrada* holding should be extended to apply to "any statute that reduces punishment in any manner, and that to increase credits is to reduce punishment." However, the Supreme Court rejected this argument, finding that *Estrada* is "specifically directed to a statute that represents ' "a legislative mitigation of the *penalty for a particular crime*" ' (*Estrada*, [63 Cal.2d] at p. 745, italics added) because such a law supports the inference that the Legislature would prefer to impose the new, shorter penalty rather than to ' "satisfy a desire for vengeance." ' " (*Id.* at p. 325.) The court concluded that this logic did not extend to a law that rewards a prisoner's good conduct while incarcerated. (*Ibid.*)

The Three Strikes Reform Act similarly deviates from the reasoning set forth in *Estrada* in several ways. First, as the *Brown* court noted, *Estrada* applies to the

16

legislative mitigation of penalties for a specific crime, and we do not find that the *Estrada* rule logically applies to a sentencing scheme like the Three Strikes law. Second, even if we were to conclude that the *Estrada* holding does apply, we find that section 1170.126, which sets forth the sentence recall procedure for certain inmates currently serving an indeterminate sentence, acts as the equivalent of a saving clause, rendering *Estrada* inapplicable. (See *People v. Nasalga* (1996) 12 Cal.4th 784, 793 [holding *Estrada* rule inapplicable to statutes with an express saving clause or its equivalent].)

A saving clause need not always be explicit, nor is the Legislature "bound to use the same method" in enacting a saving clause. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048.) Courts cannot "dictate to legislative drafters the forms in which laws must be written to express the legislative intent. Rather, what *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*Id.* at pp. 1048-1049, fn. omitted.) We believe that section 1170.126 satisfies this requirement.

The plain language of section 1170.126 sets forth a procedure through which prisoners that are serving an indeterminate life sentence, such as defendant here, may petition the trial court for a recall of their sentence. The statute does not specify that the procedures are reserved only for those serving indeterminate sentences for which the sentence is final. Therefore, for all intents and purposes, section 1170.126 functions as the equivalent of a saving clause as it essentially applies the amendments prospectively by providing a mechanism for recall of sentences for those inmates sentenced prior to the effective date of the act.

A prospective application of amended sections 667 and 1170.12 also properly comports with the purpose behind the voter initiative. Even if we were to agree that the language of section 1170.126 is ambiguous, we must then reference " ' "to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." ' " (*Robert L. v. Superior Court*, *supra*, 30 Cal.4th 894, 901.) One of

17

the main arguments advanced in favor of passing Proposition 36 was the element of public safety, such that repeat violent criminals will still get life imprisonment terms for serious or violent third strikes.  In its rebuttal to the argument against Proposition 36, proponents of the amendments reiterated that "Prop. 36 prevents dangerous criminals from being released early."  (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) Rebuttal to Argument Against Proposition 36, p. 53.)[9]

Entitling prisoners, such as defendant here, to circumvent the recall provision set forth under section 1170.126, does not advance public safety.  If defendant were sentenced today, he would qualify to be sentenced as a second strike offender under amended sections 667 and 1170.12.  However, the prosecution would be able to present evidence to disqualify defendant from this more lenient sentencing scheme and to instead sentence him as a third strike offender if any of the exceptions provided for in sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) are proven.  In addition, if defendant went through the sentencing recall petition procedure outlined in section 1170.126, he would still remain eligible for resentencing pending the trial court's determination of his risk to public safety if released.  Automatically sentencing defendant to a reduced second strike sentence creates a scenario where a prisoner's safety risk is not afforded proper judicial review.

Lastly, we find that defendant's argument that section 1170.126, subdivision (k) does not foreclose his right to automatic resentencing is without merit.  Section 1170.126, subdivision (k) states that "[n]othing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant."  Section 1170.126,

---

[9] The Voter Information Guide is not a part of the record before us on appeal. Nonetheless, it is an official government document that is the proper subject of judicial notice.  (Evid. Code, §§ 452, subd. (c), 459.)  We therefore take notice of the pertinent portions of the Voter Information Guide discussing Proposition 36 (<http://voterguide.sos.ca.gov/propositions/36/> as of Feb. 27, 2013).

subdivision (k) simply ensures that prisoners, such as defendants, may still pursue other legal actions such as petitioning the courts for a writ of habeas corpus, in addition to pursuing a sentence recall.  We do not find that section 1170.126, subdivision (k) has any bearing on defendant's alleged rights to an automatic resentencing.

We therefore find that defendant is not entitled to automatic resentencing under amended sections 667 and 1170.12.

## DISPOSITION

The judgment is affirmed.

_____
Premo, Acting P.J.

WE CONCUR:

_____
Mihara, J.

_____
Márquez, J.

19